## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RANDY L. TICE,

        Plaintiff,

    v.

PSP TROOPER TYLER PRISK and
WILLIAM CORY STOCKER,

        Defendants.

No. 4:23-CV-00823

(Chief Judge Brann)

## MEMORANDUM OPINION

### OCTOBER 24, 2023

## I.   BACKGROUND

In May 2023, Plaintiff Randy Tice filed a 3-count complaint against Defendants Tyler Prisk and William Cory Stocker.[1] This Court granted leave to amend, and Tice filed an amended complaint in August 2023.[2] Stocker then filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[3] The motion is now ripe for disposition; for the reasons that follow, it is denied.

---

[1] Doc. 1.
[2] Docs. 18, 20.
[3] Doc. 22.

## II.    DISCUSSION

### A.    Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[4] and *Ashcroft v. Iqbal*,[5] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[7]

### B.    Facts Alleged in the Amended Complaint

The facts alleged in the amended complaint, which this Court must accept as true for the purposes of this motion, are as follows.

---

[4]    550 U.S. 544 (2007).
[5]    556 U.S. 662 (2009).
[6]    *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[7]    *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

In May 2022, Randy Tice asked an automobile service center to inspect his vehicle.[8] That center, "Stocker Subaru," is owned by Defendant William Cory Stocker.[9] Stocker Subaru's service department advised Tice that his vehicle had shavings in its oil, requiring a new engine at an installed price of $8,000.[10] Tice then contacted a local junkyard to see if an engine was available there instead.[11] After calling the junkyard and asking about the engine, Tice was asked: "is this the Subaru sitting at [S]tocker Subaru because they called about getting another engine also."[12] He discovered that the same engine would cost only $2,500 from the junkyard.[13] And after contacting another dealership, Tice was informed that his engine did not have metal shavings in the oil at all.[14] Instead, the only problem preventing the engine from running was in the air conditioning system, which would cost $468.40 to repair.[15]

Tice believed that he was the victim of attempted price gouging and wanted to speak out. He alleges that a series of incidents motivated the malicious prosecution of which he now complains. On June 14, 2022, Tice sent an email to Stocker detailing the incident, concluding:

---

[8]  Doc. 20 ¶8.
[9]  *Id.* ¶¶3, 9.
[10] *Id.* ¶10.
[11] *Id.* ¶11
[12] *Id.* ¶14; Doc. 20-1.
[13] *Id.* ¶12.
[14] *Id.* ¶13.
[15] *Id.*

I think it's important for you all to know this crooked horse crap your employees are pulling on your costumers [sic]. Were they lieng [sic] to your costumer [sic] and myself? Absolutely! And they even put it in writing. Again I do not blame you or your dad for this gross deception of service at Stocker Subaru! You should be informed about this issue to better your staff and service."[16]

On July 11, 2012, a Tice sent a second email to Stocker:

You had my friend Bernie arrested for saying Gene Stocker what a "GOD DAMN LIER" [sic] you haven't fired anybody!!! You people are a bunch of fucken liars and I can prove it!!!! along with racist slur. Have a nice week!!! I'll show my hand when the time is right!![17]

Stocker did not respond, so Tice went about other means of airing his grievances. On July 11, 2022, Tice conducted a silent protest along the public sidewalk in front of the Stocker Subaru dealership.[18] Tice held a sign up for passing traffic to see, stating: "STOCKERS QUOTE $8,0000.00+, FIXED $450.00 SOMEWHERE ELSE."[19] Forty-five minutes to an hour after the commencement of Tice's protest, three Pennsylvania State Police vehicles pulled up in front of Tice.[20] Tyler Prisk, a Pennsylvania State Police officer, exited one of the vehicles and approached Tice.[21] Prisk stated that Tice was on private property, and threatened that he would be taken to "jail" if he continued to protest.[22] Following the threat, Tice

---

[16] *Id.* ¶14; Doc. 20-1.
[17] Doc. 20 ¶15; Doc. 20-2. The amended complaint gives no context as to who Bernie is or what incident is being described, but it does not appear to be relevant to Tice's claims.
[18] Doc. 20 ¶¶16-17.
[19] *Id.* ¶17; Doc. 20-4.
[20] Doc. 20 ¶18.
[21] *Id.* ¶19.
[22] *Id.* ¶20-21.

ceased his protest and left the scene from fear of arrest.[23] The crux of this case is the allegation that Prisk made this threat "with the encouragement and at the instigation of Stocker, who had falsely asserted to Prisk that Tice was on private property owned by Stocker Subaru and/or Stocker."[24] Tice states that Stocker knew that the sidewalk was not private property, and hence he knew that Tice was not trespassing, but that he was motivated by an improper motive to suppress Tice's speech against his business.[25]

It was following this alleged communication between Prisk and Stocker that two criminal charges were filed against Tice, including a trespass charge "instigated and motivated" by Stocker's false allegations.[26] On July 12, 2022, Prisk filed a charge of summary trespass in the local district court under 18 Pa.C.S. § 3503(b)(1)(i).[27] This charge alleges that Tice refused to leave private property when given notice of trespass.[28] It also states: "[o]n 7/12/22, victim namely William Cory STOCKER advised me that the Defendant was on his companies [sic] property with a sign."[29] After trial before the magisterial district court and an appeal to the Centre

---

[23] *Id.* ¶25.
[24] *Id.* ¶22.
[25] *Id.* ¶42-43.
[26] *Id.* ¶30.
[27] *Id.* ¶28.
[28] *Id.*; Doc. 20-5.
[29] Doc. 20-5.

County Court of Common Pleas, Tice was ultimately acquitted of the trespass charge.[30]

Tice's amended complaint alleges three causes of action, but only one lies against Stocker: malicious prosecution for trespass.[31] The Court turns to that issue now.

### C.   Analysis

To state a claim for malicious prosecution in Pennsylvania, a Plaintiff must plead (1) that the defendant instituted criminal proceedings against the plaintiff, (2) without probable cause, (3) with actual malice, and (4) that the criminal proceeding terminated in the plaintiff's favor.[32] It is clear that the trespass proceeding terminated in Tice's favor when he was acquitted. The thrust of Stocker's objections pertain to the first element: whether he "instituted criminal proceedings" against Tice.

In determining the scope of malicious prosecution under Pennsylvania law, courts look to the Second Restatement of Torts for guidance.[33] Several seminal cases cite to Section 653, comment (g) of the Restatement in clarifying when a private defendant can be considered to "institute criminal proceedings."[34] As the Restatement and related case law clarify, private individuals can only be liable for

---

[30]   Doc. 20 ¶32.

[31]   *Id.* at 8.

[32]   *Burke v. Kubicek*, 264 A.2d 391 (Pa. Super. Ct. 2021) (citing *Kelley v. General Teamsters, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988)).

[33]   *Bradley v. Gen. Accident Ins. Co.*, 778 A.2d 707, 710-11 (Pa. Super. Ct. 2001).

[34]   *Id.*; *Griffiths v. CIGNA Corp.*, 988 F.2d 457, (3d Cir. 1993), *rev'd on other grounds en banc sub nom. Miller v. CIGNA Corp.*, 47 F.3d 586 (3d Cir. 1995).

initiating criminal proceedings under limited circumstances, because officers generally exercise their own discretion in bringing cases against criminal defendants.[35] Usually, the malicious prosecution action then lies against the officer for choosing to initiate a proceeding rather than the private citizen.[36]

But "it is not necessary that one who procures the institution of criminal proceedings actually file the charges and prepare the complaint."[37] Two bases exist for concluding that a private defendant has initiated criminal proceedings.[38] Liability can be had where either (1) the private person's desire to have the proceeding initiated was the "determining factor in the commencement of the prosecution," for example, through urging officers to prosecute the case; or (2) the public official acted upon the person's false information in carrying out the arrest.[39] In either circumstance, the actions of the private person preclude the officer from exercising his own discretion in deciding to carry out the prosecution.

---

[35] *Bradley*, 778 A.2d at 711 ("[C]omment g distinguishes between situations in which a private individual merely provides information to an official who exercising discretion, may initiate charges, and those in which a private individual either provides knowingly false statements to an official or directs or pressures an official to initiate charges, thereby making the officer's intelligent use of discretion impossible"); *Griffiths*, 988 F.2d at 464.

[36] *Griffiths*, 988 F.2d at 4667 ("[T]he duty falls on the police and the prosecuting authorities, and not on a private individual supplying information, to determine what are the significant facts in an investigation.").

[37] *Hess v. Cnty of Lancaster*, 514 A.2d 681, 684 (Pa. Cmwlth. 1986).

[38] After quoting comment (g) at length, Stocker seems to conflate these two bases for liability rather than addressing them separately in his brief. *See* Doc. 23 at 6-8.

[39] *Burgos v. Philabundance*, No. 02978, 2015 Phila. Ct. Com. Pl. LEXIS 286, at *8 (Phila. Cnty Ct. of Comm. Pleas, Sept. 14, 2015), *aff'd sub nom. Burgos v. Morgan, Lewis & Bockius, LLP*, 160 A.3d 244 (Pa. Super. 2017) (unpublished); *Griffiths*, 988 F.2d at 464 (citing *Campbell v. Yellow Cab Co.*, 137 F.2d 918, 921 (3d Cir. 1943)); *Foman v. Albert Einstein Med. Ctr.*, No. 1043, 2011 Phila. Ct. Com. Pl. LEXIS 71, *9 (Mar. 23, 2011).

Here, Tice alleges both theories, but the Court focuses only on the latter theory because it is sufficient for the claim to survive dismissal.[40] Tice alleges that Stocker provided Prisk the false information that Tice was protesting on private property, while fully aware of the fact that this was a lie, which ultimately led to Tice's arrest. Stocker first argues that the complaint must specify that he provided Prisk with false information pertaining to each element of trespass;[41] this is incorrect. The standard requires only the allegation that Prisk acted on Stocker's false information—in this matter that Tice was protesting on private property—in carrying out the arrest. Stocker also argues that "Prisk still had the opportunity to exercise his own discretion and perform his own analysis." This again misinterprets settled doctrine. Where the public official has acted upon false information,[42] "an intelligent exercise of the officer's discretion becomes impossible,"[43] and the Court is "foreclosed from concluding that the arresting officer could have exercised independent discretion."[44]

Stocker also contends that the Court should disregard Tice's allegation as conclusory. That "[s]ome amorphous 'false statement' was made by Stocker to

---

[40] As the case develops, it may be necessary to determine whether this other theory of liability is viable. But that is not necessary on this motion to dismiss.

[41] Doc. 23 at 7-8 ("[A]n individual commits the offense of trespass if he enters or remains on the property when he knows 'he is not licensed or privileged to do so.' There are no averments . . . that this Defendant told Trooper Prisk that Tice "knew" he was not permitted to be on the sidewalk."

[42] This confusion may have been caused by Stocker's conflation of the two standards of liability set out above.

[43] *Id.* at *9-10 (quoting *Jaindl v. Mohr*, 661 A.2d 1362, 1364 (1995)).

[44] *Braswell v. Wollard*, 243 A.3d 973, 979 (Pa. Super. Ct. 2020).

Trooper Prisk that Tice was on private property," Stocker maintains, is "clearly just conclusory language" because "the Amended Complaint lack[s] any allegation or documentation of when and/or where Stocker even spoke to Trooper Prisk before he arrived at the scene."[45] The Court respectfully disagrees. Rather than alleging "some amorphous false statement," Tice specifically alleges that "Stocker knowingly gave false information to Prisk that Tice was not authorized to be on the sidewalk."[46] It is unclear what additional specificity is sought other than a verbatim quotation, which asks far too much on a motion to dismiss. Moreover, it is difficult to discern how the Pennsylvania State Police knew to approach Tice at Stocker Subaru at all if not for some communication between Stocker and Prisk or other Pennsylvania State Police officers. In any event, the amended complaint actually *does* contain documentation of when Stocker spoke to Trooper Prisk before he arrived at the scene. Prisk's own citation states: "On 7/12/22, Stocker advised me that the Defendant was on his companies [sic] property with a sign."[47] The allegation that Stocker falsely told Prisk that Tice's protest was occurring on private property is therefore an initiation of criminal proceedings under Pennsylvania law, and is plausibly alleged.

Turning to the remaining elements of malicious prosecution, the Court notes that the development of case law has caused these elements to bleed into each other

---

[45]   Doc. 23 at 9.
[46]   Doc. 20 ¶40; *see also* Doc. 20 ¶¶30, 41, 43, 44.
[47]   Doc. 20-5.

in this specific context. "[I]nterestingly enough, every single element of the test for establishing a prima facie case of malicious prosecution is satisfied if a lie was told to law enforcement officials—if a defendant intentionally provided false information to law enforcement officials."[48] Sketching out the remaining malicious prosecution then becomes superfluous, but I will elaborate for the sake of completeness.

Probable cause is "a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense."[49] Yet "[w]hen a private individual instigates a criminal proceeding against another with fabricated claims, there is not a reasonable basis for suspicion" by definition.[50] So if Prisk relied on Stocker's statement that Tice's protest was on private property, then there could not have been probable cause. Moreover, Tice protested on a public sidewalk outside of Stocker Subaru.[51] The sidewalk is a quintessential public forum. Like all public ways, it "occup[ies] a 'special position in terms of First Amendment protection' because of [its] historic role as [a] site[] for discussion and debate."[52] While some limitations

---

[48]   *Burgos*, 2015 Phila. Ct. Com. Pl. LEXIS 286, *8.

[49]   *Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Local Union 239*, 544 A.2d 940, 942 (Pa. 1988) (cleaned up) (quoting *Miller v. Pa. R.R. Co.*, 89 A.2d 809, 811-12 (Pa. 1952)).

[50]   *Chen v. Chen*, No. 2020 Pa. Super. Unpub. LEXIS 1820, *6 (Pa. Super. Unpub. LEXIS June 1, 2020); *Braswell*, 243 A.3d at 978-79 ("If, for summary judgment purposes, it is presumed that [defendant] knowingly gave false information to the police, then as a matter of law, it must also be presumed that [plaintiff's] arrest was initiated by those accusations.").

[51]   *See* Doc. 20-3 (picture of public sidewalk outside of Stocker Subaru).

[52]   *McCullen v. Coakley*, 573 U.S. 464, 476 (2014) (quoting *United States v. Grace*, 461 U.S. 171, 180 (1983)).

could lawfully be imposed on the manner of Tice's speech,[53] no reasonable person could believe that Tice's mere presence or speech on the public sidewalk was unlawful or constituted trespass.[54] Prisk would presumably not have thought differently unless Stocker claimed that the sidewalk was in fact his private property.

"Malice has been stated to include ill-will in the sense of spite, the use of a prosecution for an extraneous, improper purpose, or the reckless and oppressive disregard of the plaintiff's rights."[55] Alleging that a defendant procured proceedings against a person by knowingly providing false information to a police officer necessarily demonstrates malice, for a person cannot be arrested on false pretenses for a "proper purpose." Additionally, "[m]alice may be inferred from the absence of probable cause"[56] and the Court must take this reasonable inference in Tice's favor at the dismissal stage. Moreover, Tice has further supported his actual malice claim by alleging that Stocker provided this false information in retaliation for Tice's scurrilous complaints and the potential effect of Tice's protest on Stocker's business. So malice has been pled three times over.

The plausible allegation that Stocker, in complaining to Prisk, knowingly mischaracterized Tice's protest as occurring on private property, suffices at this

---

[53]  *United States v. Kokinda*, 497 U.S. 720 (1990).
[54]  *See McCullen*, 573 U.S. at 489 (2014); *Bruni v. City of Pittsburgh*, 924 F.3d 363, 366-67 (3d Cir. 2016).
[55]  *Griffiths*, 988 F.2d at 463-64.
[56]  *Griffiths*, 988 F.2d at 463 (citing *Kelley*, 544 A.2d at 941; *Hugee v. Pa. R.R. Co.*, 101 A.2d 740, 742 (Pa. 1954)).

juncture in the litigation to show that Stocker initiated criminal proceedings against Tice; that those proceedings lacked probable cause; and that they were instituted with malice. As the Pennsylvania Superior Court has stated, in malicious prosecution cases where private citizens weaponize falsehoods to initiate criminal proceedings, "essentially, it comes down to bad faith."[57]

## III.   CONCLUSION

Defendant's motion to dismiss pursuant to Rule 12(b)(6) is therefore denied. An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[57]   *Demby v. Drexel Univ.*, 2016 Pa. Super. Unpub. LEXIS 2961, *19 (Pa. Super. Ct. 2016).