## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

RANDY L. TICE,

               Plaintiff,

    v.

PSP TROOPER TYLER PRISK & WILLIAM CORY STOCKER,

               Defendants.

CIVIL ACTION NO. 4:23-CV-00823

(MEHALCHICK, J.)

### MEMORANDUM

Before the Court are two motions for summary judgment filed by Defendants William Cory Stocker ("Stocker") (Doc. 35) and Pennsylvania State Police Trooper Tyler Prisk ("Trooper Prisk") (Doc. 38). Plaintiff Randy L. Tice ("Tice") first filed this civil rights lawsuit against Stocker and Trooper Prisk on May 18, 2023. (Doc. 1). Tice filed the operative amended complaint on August 2, 2023. (Doc. 20). Tice's claims arise out of two citations Trooper Prisk issued Tice, one for summary trespass pursuant to 18 Pa. Cons. Stat. § 33503(b)(1(i) and one for harassment pursuant to 18 Pa.C.S.A. § 2709(a)(4). (Doc. 20). For the following reasons, both motions will be **GRANTED** (Doc. 35; Doc. 38).

### I.  BACKGROUND AND PROCEDURAL HISTORY

This factual background is taken from the amended complaint, the parties' statements of material facts and accompanying exhibits, as well as opposing parties' responses thereto.[1]

---

[1] Pursuant to Local Rule 56.1, the Court accepts as true all undisputed material facts supported by the record. Where the record evinces a disputed fact, the Court will take notice. The facts have been taken in the light most favorable to the non-moving party with respect to the motion.

In May of 2022, Tice visited Stocker Subaru, an automobile dealership and service center owned by Defendant Stocker, seeking an inspection of his vehicle, which he believed was not running properly. (Doc. 20, ¶¶ 8, 9; Doc. 41, ¶ 3). At the time of the visit, Tice and Stocker knew each other as neighbors. (Doc. 20, ¶ 14; Doc. 41, ¶ 8). For the necessary work to fix the vehicle, Stocker Subaru quoted Tice $8,000. (Doc. 20, ¶ 10; Doc. 41, ¶ 3; Doc. 41-1, at 2). Tice got a second opinion from a junk yard. (Doc. 20, ¶ 12; Doc. 41-1, at 2).  The junk yard quoted him quoted $2,500 for the same work. (Doc. 20, ¶ 12; Doc. 41-1, at 2).

"[W]anting to voice his displeasure" at Stocker Subaru's quote, Tice sent Stocker two emails. (Doc. 20, ¶¶; Doc. 36, ¶¶ 4-7; Doc. 41, ¶¶ 4-5; Doc. 44, ¶¶ 4-6; Doc. 47, ¶¶ 4-6). In the first, which was sent on June 14, 2022, Tice stated that he did not blame Stocker for "this gross deception of service at Stocker Subaru," but he wanted to inform Stocker of the "crooked horse crap your employees are pulling on your customers." (Doc. 41, ¶ 4; Doc. 41-1, at 2). In the next sent on July 11, 2022, Tice wrote to Stocker that "[y]ou people are a bunch of fucken lairs and I can prove it!!!! along with racist slur. Have a nice week!!! I'll show my hand when the time right!!" (Doc. 41, ¶¶ 5, 6; Doc. 41-2, at 2). While Stocker did not respond to either email, he understood the phrase "I'll show my hand when the time is right!!" to be a threat.[2] (Doc. 41, ¶ 6; Doc. 41-2, at 2).

On July 11, 2022, Stocker contacted Trooper Prisk, with whom he had no prior relationship. (Doc. 36, ¶ 3; Doc. 42, ¶ 3). Stocker reported Tice's emails and showed them to

---

[2] Tice denies any suggestion that the emails he sent Stocker were legally threatening, citing his acquittal on the charge of harassment. (Doc. 37-1, at 10; Doc. 44, ¶ 6).

Trooper Prisk. (Doc. 36, ¶¶ 3, 4). Trooper Prisk later testified that he believed Tice's statement "I'll show my hand when the time is right!!" sounded threatening towards Stocker. (Doc. 36, ¶6; Doc. 41, ¶ 18; Doc. 44, ¶ 6). Immediately after speaking with Stocker, Trooper Prisk went to Tice's resident to discuss the matter with him. (Doc. 36, ¶¶ 8-9; Doc. 41, ¶ 9; Doc. 44, ¶ 8; Doc. 47, ¶ 8). Trooper Prisk found Tice sleeping on his porch. (Doc. 36, ¶ 9). Trooper Prisk informed Tice that he was there to discuss the emails he sent Stocker. (Doc. 36, ¶¶ 8-10; Doc. 41, ¶ 11; Doc. 44, ¶ 8). Tice confirmed that he sent the emails in question. (Doc. 36, ¶ 10; Doc. 41, ¶ 12; Doc. 44, ¶ 10). Trooper Prisk informed Tice that he would be cited for harassment and "advised him that Mr. Stocker wanted no further contact with Mr. Tice on his personal property or private property, or the repercussions could be a nontraffic citation for simple trespass." (Doc. 36, ¶¶ 11, 12; Doc. 37-1, at 6; Doc. 44, ¶¶ 11, 12).

The next day, on July 12, 2024, Stocker conducted a silent protest on the public sidewalk in front of the Stocker Subaru dealership. (Doc. 20, ¶¶ 16-17; 20-4; 41, ¶ 18; Doc. 36, ¶¶13—16; Doc. 44, ¶ 13). During his protest, he held a handmade sign stating:

> **Stockers quote $8000.00 +**
> **Fixed $450.00**
> **Somewhere Else**

(Doc. 20, ¶¶ 16-17; 20-4; 41, ¶ 18; Doc. 36, ¶¶13—16; Doc. 44, ¶ 13).

Stocker was notified by employees that Tice was on his property. (Doc. 41-3, at 14). Stocker then "saw [Tice] on the grasses around the sidewalk and on the sidewalk."[3] (Doc. 41-3, at 14). From this, Stocker concluded that Tice was trespassing on his land and notified the police

---

[3] Stocker also testified that he saw pictures and still images from surveillance footage of Tice "standing in a bunch of different locations." (Doc. 41-3, at 17).

that Tice was standing on his business property at Stocker Subaru. (Doc. 36, ¶ 13; Doc. 41-3, at 17; Doc. 44, ¶ 13).

Trooper Prisk and Trooper Kopp responded to Stocker's call. (Doc. 41, ¶¶ 24-25; Doc. 47, ¶ 24). When Trooper Prisk arrived at Stocker Subaru, he observed Tice holding his sign on the sidewalk nearby. (Doc. 36, ¶¶ 16-20; Doc. 41, ¶ 24; Doc. 44, ¶¶ 19-20). He approached Tice and informed him that Stocker did not want to have any interaction with him. (Doc. 41, ¶ 26). Tice informed Trooper Prisk that he believed he had not walked on Stocker Subaru's property and detailed the route he had taken to his location. (Doc. 41, ¶¶ 26-27; Doc. 47, ¶¶ 26, 27). Using this information, "Trooper Prisk accessed his Centre County GIS map to determine ownership of the properties that [Tice] said he walked through to get to the sidewalk in front of Stocker Subaru," and determined that Tice had "walked, and therefore trespassed, across private business property which was owned by Defendant Stocker's family, in order to arrive at the portion of sidewalk where he claimed he was protesting." (Doc. 36, ¶¶ 25-26; Doc. 44, ¶¶ 25, 26). Trooper Prisk subsequently issued Tice a citation for simple trespass. (Doc. 36, ¶ 27; Doc. 44, ¶ 27).

Following a bench trial, Magistrate Judge Kelley Gillette-Walker convicted Tice of simple trespass and dismissed the harassment citation. (Doc. 41-4). Tice subsequently appealed the simple trespass conviction. (Doc. 41, ¶ 38; Doc. 47, ¶ 38). The District Attorney agreed to "*nolle prosecui*" the trespass charge. (Doc. 36, ¶ 36; Doc. 41, ¶ 39; Doc. 44, ¶ 37; Doc. 47, ¶ 39). Neither Trooper Prisk nor Stocker objected to that decision. (Doc. 36, ¶ 37; Doc. 44, ¶ 37).

Tice filed this lawsuit on May 18, 2023. (Doc. 1). His amended complaint was filed on August 2, 2023. (Doc. 20). Therein, Tice alleges the following counts: malicious

prosecution against Stocker relating to the trespass charge brought under Pennsylvania common law (Count I); retaliatory prosecution against Trooper Prisk under the First Amendment (Count II); and suppression of free speech against Trooper Prisk brought under the First Amendment (Count III). (Doc. 20, at 8-12). As relief, he seeks compensatory damages and a permanent injunction enjoining Trooper Prisk "from filing any citation or commencing or maintaining any criminal charge against Tice for protesting activities on the public sidewalk in front of Stocker Subaru or for sending customer complaint emails to Stocker Subaru in the nature of speech protected by the First Amendment." (Doc 20, at 13).

Stocker filed his motion for summary judgment on September 24, 2024, along with a statement of facts and a brief in support. (Doc. 35; Doc. 36; Doc. 37). Tice filed a brief in opposition to Stocker's motion and an answer to his statement of facts on October 15, 2024. (Doc. 42; Doc. 43). On October 22, 2024, Stocker filed a reply brief. (Doc. 45).

Trooper Prisk filed a motion for summary judgment, statement of facts, and brief in support on October 7, 2024.[4] (Doc. 38; Doc. 39; Doc. 40). Tice filed a brief in opposition and answer to Trooper Prisk's statement of facts on October 29, 2024. (Doc. 46; Doc. 47). On November 8, 2024, Trooper Prisk filed a reply brief in support of his motion. (Doc. 48). On April 25, 2025, upon his motion and with leave of this Court, Tice filed a sur-reply brief. (Doc. 56). Accordingly, both motions are ripe for disposition.

---

[4] Trooper Prisk refiled his brief in support of his motion for summary judgment and statement of facts with all relevant exhibits on October 8. (Doc. 40; Doc. 42).

II.    LEGAL STANDARDS

A.    MOTION FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. Anderson, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant makes

such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential).

B. 42 U.S.C. SECTION 1983

Tice asserts his First Amendment claims against Trooper Prisk under 42 U.S.C. § 1983, which provides a private cause of action for violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .
>
> 42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a § 1983 claim, a plaintiff must demonstrate that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough*

*of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). Further, "a defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

### III.  DISCUSSION

#### A.  TICE'S MALICIOUS PROSECUTION CLAIM AGAINST STOCKER

In Count I of the amended complaint, Tice accuses Stocker of malicious prosecution under Pennsylvania State Law.[5] (Doc. 20, ¶¶ 39-46). This claim arises out of the citation Tice received for trespass on Stocker's property. (Doc. 20, ¶¶ 39-46). Stocker argues that he cannot be held liable for malicious prosecution as a private individual because Tice has failed to demonstrate that Stocker played a "determinative role" in Trooper Prisk's charging decision. (Doc. 37, at 4, 6). According to Tice, the record reflects that it was Stocker who initiated criminal proceedings against him because Stocker's "false representation" that Tice was protesting on his private property was the determining factor for Trooper Prisk in issuing the citation for trespass. (Doc. 43, at 8).

---

[5] As noted by Tice, "'[t]he common law elements are to be contrasted with the elements of a malicious prosecution claim brought under the Fourth Amendment. The latter requires a showing by plaintiff 'that a government official charged him without probable cause, leading to an unreasonable seizure of his person[.]' *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 558 (2024). Tice has not asserted a Fourth Amendment claim against Stocker." (Doc. 43, at 1 n.1).

Under Pennsylvania common law a "private individual may be subject to liability for malicious prosecution if (a) he initiates or procures the institution of criminal proceedings without probable cause and primarily for a purpose other than that of bringing the offender to justice, and (b) the proceedings have terminated in favor of the accused." *Macolino v. Twp. of Lower Moreland*, No. CV 18-1476, 2020 WL 5820742, at *11 (E.D. Pa. Sept. 30, 2020) (citing *Bradley v. Gen. Acc. Ins. Co.*, 778 A.2d 707, 710 (Pa. Super. 2001)). "The law in Pennsylvania on malicious prosecution has developed to a large extent based upon the Restatement (Second) of Torts." *Bradley*, 778 A.2d at 710–11 (citing *Gallucci v. Phillips & Jacobs, Inc.*, 614 A.2d 284, 290 (Pa. Super. 1992)); *see also Griffiths v. CIGNA Corp.*, 988 F.2d 457, 464 (3d Cir. 1993), *aff'd*, 60 F.3d 814 (3d Cir. 1995), *overruled on other grounds by Miller v. CIGNA Corp.*, 47 F.3d 586 (3d Cir. 1995). In addressing claims such as the one at bar, courts have turned to section 653, comment g of the Restatement (Second) of Torts. *Griffiths*, 988 F.2d at 464. As explained by the Third Circuit:

> Comment g makes clear that in the latter case a private individual who does not knowingly provide false information is not responsible for the institution of the proceedings, and thus cannot be held liable for malicious prosecution as he need not have had a reasonable basis for making the accusation. *See also Campbell v. Yellow Cab Co.,* 137 F.2d at 921 (holding person who merely identifies suspect and "does not otherwise attempt to influence the officers in the exercise of their discretion as to the prosecution of the person identified [if] the person making the identification believes it to be correct ... is not deemed the instigator of criminal proceedings subsequently begun by the police ..."); *Davis v. Equibank,* 603 A.2d at 640 (refusing to permit imposition of liability on witness for negligent misidentification of robbery suspect).

*Griffiths*, 988 F.2d at 464

This considered:

> Liability can be had where either (1) the private person's desire to have the proceeding initiated was the "determining factor in the commencement of the prosecution," for example, through urging officers to prosecute the case; or (2) the public official acted upon the person's false information in carrying out the

arrest. In either circumstance, the actions of the private person preclude the officer from exercising his own discretion in deciding to carry out the prosecution.

*Tice v. PSP Trooper Tyler Prisk*, No. 4:23-CV-00823, 2023 WL 7004427, at *3 (M.D. Pa. Oct. 24, 2023); *see also Burgos v. Morgan, Lewis & Bockius, LLP*, No. 735 EDA 2015, 2017 WL 57879, at *6 (Pa. Super. Ct. Jan. 5, 2017).

Merely supplying government officials with information may be sufficient to sustain a malicious prosecution claim against a private individual when the individual knowingly provided false information to government officials or "'appear[s] that his desire [was] to have the proceedings initiated, expressed by direction, request or pressure of any kind [and] was the determining factor in the official's decision to commence the prosecution.'" *Giddens v. Stewart*, No. 20-CV-01474, 2021 WL 3100188, at *7 (E.D. Pa. July 22, 2021) (quoting *Hess v. Lancaster Cnty.*, 100 Pa. Cmwlth. 316, 514 A.2d 681, 683 (1986)). Similarly, omitting material information may also form a basis for malicious prosecution. *Burgos*, 2017 WL 57879, at *6; *see also Bristow v. Clevenger*, 80 F. Supp. 2d 421 (M.D. Pa. 2000).

Here, Stocker asserts that Tice cannot establish his claim on either basis. (Doc. 37, at 6). Stocker explains that the record reflects that while Stocker alerted Trooper Prisk that Tice was on his land, Trooper Prisk's charging decision stemmed from his own discretion and independent investigation. (Doc. 37, at 6-7). Indeed, the record contains ample support that Trooper Prisk conducted his own investigation before issuing Tice the citation, including his review of GIS map data providing Tice had traversed on Stocker's private property. (Doc. 36, ¶ 7). At the relevant bench trial, the state Magistrate Judge found the Plaintiff guilty of summary trespass based on this evidence and Trooper Prisk's testimony. (Doc. 36, ¶ 34).

Further, while the parties dispute whether the language of the citation supports Tice's proposition that Stocker played a determinative factor in Tice being cited for trespass, merely

supplying information to the police is insufficient to establish a malicious prosecution claim when the information is believed to be true. *See Giddens,* 2021 WL 3100188, at *7. Stocker's testimony indicates that he believed Tice had trespassed on his land, a belief that is supported by the GIS map data submitted by Trooper Prisk. (Doc. 41-3, at 13, 16). The trespass citation states that "William Cory STOCKER advised [Defendant Prisk] that the Defendant was on his companies [sic] property with a sign." (Doc. 20-5). According to Tice, this language serves as "a clear assertion that Prisk had received information from Stocker that Tice was on Stocker property." (Doc. 43, at 9). However, the Court agrees with Stocker that him "merely giving information to the police does not make [him as] a private individual liable for malicious prosecution" if that information is believed to be true and the individual did not expressly direct officers to issue the citation. (Doc. 45, at 3); *see Giddens,* 2021 WL 3100188, at *7. The record contains no support for Tice's conclusion that Stocker acted with malice or knowingly lied to the police in order to get Tice convicted of trespass. *Cf. Giddens,* 2021 WL 3100188, at *8 (dismissing a state law claim for malicious prosecution against a private citizen where the complaint contained no allegation that the private individual "acted with malice or for the purpose of initiating criminal proceedings against Plaintiff."). The record also does not reflect that it was at Stocker's sole discretion and direction that Tice was charged. Instead, the record shows that Trooper Prisk responded to Stocker's call and then completed his own investigation to determine whether or not to charge Tice. (Doc. 37, at 7; Doc. 37-1, at 16-17). Again, "comment g [of the Restatement] distinguishes between situations in which a private individual merely provides information to an official who exercising discretion, may initiate charges, and those in which a private individual either provides knowingly false statements to an official or directs or pressures an official to initiate charges, thereby making the officer's

intelligent use of discretion impossible." *Bradley*, 778 A.2d at 710–11. Here, because no reasonable mind could disagree that Trooper Prisk used his independent discretion to issue Tice the trespass citation, a determination already made by the fact finder in state court, Tice's malicious prosecution claim against Stocker, Count I of the amended complaint, is properly **DISMISSED**. (Doc. 20). Stocker's motion for summary judgment will be **GRANTED**. (Doc. 35).

### B. Tice's Retaliatory Prosecution Claim Against Trooper Prisk

Trooper Prisk argues that Tice' First Amendment retaliatory prosecution claim against him, Count II of the amended complaint, fails because Trooper Prisk had probable cause to issue Tice both citations for harassment and simple trespass. (Doc. 20, at 10; Doc. 40, at 4). "'[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "A claim for First Amendment retaliation requires proof of: '(1) constitutionally protected conduct, (2) a retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.'" *Farmer v. Decker*, 353 F. Supp. 3d 342, 352 (M.D. Pa. 2018) (quoting *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)). To succeed on a retaliatory prosecution claim, a plaintiff must demonstrate that the government official lacked probable cause to bring the underlying charges. *Hartman*, 547 U.S. at 256; *see also Bell v. City of Harrisburg*, 457 Fed. Appx. 164, 166 (3d Cir. 2012); *see also Favata v. Seidel*, 511 Fed. Appx. 155 (3d Cir. 2013).

"[P]robable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Franks v. Delaware*, 438 U.S. 154, 165 (1978); *see also Trunzo v. Mayer*, 658 F. App'x 654, 658 (3d Cir. 2016). "Probable cause exists when the 'facts and circumstances within the officer's knowledge. . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Johnson v. Campbell*, 332 F.3d 199, 211 (3d Cir. 2013) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). This inquiry takes the totality of the circumstances into consideration and is objective, as it is based on the information available to the officer at the time of the charging, or in this case, issuing of the citations. *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994); *Wright v. City of Philadelphia*, 409 F.3d 595, 603 (3d Cir. 2005). With these principles in mind, the Court will turn to first Tice's harassment citation, and then his citation for simple trespass.[6]

### 1. Harassment Citation

A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures. 18 Pa.C.S.A. § 2709(a)(4). Per the statute, harassment may include communication over email. 18 Pa.C.S. § 2709(a)(4)-

---

[6] In making his First Amendment retaliation argument, Tice avers that his speech was constitutionally protected. (Doc. 46, at 5). The speech he identifies is his act of protest on the public sidewalk nearby Stocker Subaru. (Doc. 46, at 58). Because this Court finds Trooper Prisk had independent probable cause to issue Tice his citations apart of him engaging in protected speech, the Court will not opine on this argument.

(7), (f); *see Commonwealth v. Papp*, 2023 PA Super 209, 305 A.3d 62, 71 (2023), *appeal denied*, 316 A.3d 4 (Pa. 2024), *and cert. denied sub nom. Papp v. Pennsylvania*, 145 S. Ct. 438 (2024). Here, the alleged harassment for which Tice was cited stems from the email he sent Stocker in which he wrote "I will show my hand when the time is right." (Doc. 40, at 10). As Trooper Prisk sees it, this email served as probable cause for Tice's harassment citation because it expresses a potential to do harm. (Doc. 40, at 10). Trooper Prisk asserts, in deciding to cite Tice, he "did not just rely on Stocker's statements—he reviewed the threatening email, confirmed that Plaintiff had sent the threatening email, and corroborate all witness statements with direct evidence." (Doc. 42, at 10). As a result, Trooper Prisk maintains he had probable cause to issue Tice the harassment citation. (Doc. 42, at 10). Tice disagrees, arguing that the email to Stocker cannot constitute a basis for harassment because "'[a] single act will not constitute a course of conduct under the definition of harassment.'" *Com. v. Lutes*, 793 A.2d 949, 961 (Pa. Super. 2002). Furthermore, Tice asserts that his "right to send an email to Prisk complaining about certain price- gouging conduct he alleges Stocker tried to effectuate was moreover clearly established under the First Amendment and constitutionally protected in any event." (Doc. 46, at 8). As explained by Trooper Prisk, "[u]nder the harassment statute, communications are considered threatening if they do not fall within an identified exception to the First Amendment and constitute "fighting words' or 'true threats.'" (Doc. 48, at 9).

Looking at the facts and circumstances available, reasonable minds could disagree as to whether Tice's email was "sufficient [] to warrant a reasonable person to believe that an offense [was] committed by [Tice]." *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003). There is a question of material fact regarding whether Trooper Prisk's belief that Tice's statement "I will show my hand when the time is right," was threatening in such a manner

that a reasonable officer would believe a harassment charge was proper. This is further supported by the Magistrate Judge's dismissal of Tice's harassment charge. Thus, because there are questions for a fact finder to determine, Trooper Prisk's motion for summary judgment will be denied on this basis. (Doc. 38).

### 2.  Simple Trespass Citation

Simple trespass occurs when a person "knowing that he is not licensed or privileged to do so, he enters or remains in any place for the purpose of: threatening or terrorizing the owner or occupant of the premises." 18 Pa.C.S.A. § 3503(b.1). Here, the record reflects that Trooper Prisk undertook several measures to investigate the matter in his determination that Tice was guilty of simple trespass. Trooper Prisk interviewed Stocker, who testified he knew Tice was on his property because he "was notified by other employees, and I saw it with my own eyes," (Doc. 41-3, at 13-15) spoke with Tice, who admitted to approaching Stocker's car with his sign to "make him mad," (Doc. 41-5, at 82, 86), observed him with his own eyes, and used GIS map data. (Doc. 41-4, at 40, 54, 63). This considered, Trooper Prisk asserts he "far exceeded the bare-minimum requirements to establish probable cause for simple trespass."[7] (Doc. 42, at 12). This Court agrees. Based on the evidence in the record as described *supra*, no reasonable juror could disagree that Trooper Prisk had probable cause to

_____

[7] The parties consider whether the fact Tice moved locations upon being approached by Trooper Prisk weighs into the analysis before the Court. (Doc. 46, at 9). Specifically, Trooper Prisk asserts that by moving, Tice demonstrated his "knowledge of lack of authority," to stand in front of Stocker Subaru. (Doc. 42, at 11; Doc. 46, at 9). As Tice points out, this argument is not compelling because at the time, Tice was standing on a public sidewalk. (Doc. 46, at 9). Regardless, even without this "evidence," looking at the totality of the circumstances the record supports Trooper Prisk had a reasonable basis on which to issue Tice a citation for trespass.

charge Tice with simple trespass. Accordingly, Tice cannot satisfy the requirements for his retaliatory prosecution claim as it relates to his trespass citation.

Tice next argues that a showing of probable cause is not necessary in this case. (Doc. 46, at 10-12). Citing recent Supreme Court precedent, Tice avers that "[i]n the context of a criminal charge it is not necessary to show a lack of probable cause to assert a constitutional violation." (Doc. 46, at 10). In support of this argument, Tice quotes the Supreme Court:

> Although probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so. In such cases, an unyielding requirement to show the absence of probable cause could pose "a risk that some police officers may exploit the arrest power as a means of suppressing speech."

*Nieves v. Bartlett,* 587 U.S. 391, 406 (2019) (quoting *Lozman v. Riviera Beach*, 585 U.S., at —, 138 S.Ct. at 1953–54 (2018)).

Tice continues, "[i]t cannot plausibly be argued that it is a usual exercise of law enforcement's discretion to charge an individual with a crime for conducting a one-man, silent protest on a public sidewalk." (Doc. 46, at 11). In response, Trooper Prisk avers that Tice "correctly states proving lack of probable cause is not necessary in all retaliatory prosecution claims but he fails to present objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." (Doc. 48, at 12).

In the 2024 case *Gonzalez v. Trevino*, the Supreme Court affirmed what was held in *Nieves*, that when bringing a retaliatory arrest claim, a plaintiff must establish the absence of probable cause except for in limited circumstances where they produce "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Gonzalez v. Trevino*, 602 U.S. 653, 655 (2024); *Nieves*, 587 U.S. at 407. The *Gonzalez* Court clarified that the *Nieves* exception accounts for

"'circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so.'" 602 U.S. at 658 (quoting *Nieves*, 587 U.S. at 406). The *Gonzalez* Court continued:

> To fall within the exception, a plaintiff must produce evidence to prove that his arrest occurred in such circumstances. The only express limit we placed on the sort of evidence a plaintiff may present for that purpose is that it must be objective in order to avoid "the significant problems that would arise from reviewing police conduct under a purely subjective standard."

> 602 U.S. at 658 (quoting *Nieves*, 587 U.S. at 407).

Here, as articulated by Trooper Prisk, Tice "has not even attempted to produce objective evidence to prove that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been that his arrest. (Doc. 48, at 14-15). While Tice argues this Court should take judicial notice of the fact "that individuals are usually not arrested when standing on public sidewalks and peacefully protesting a cause," he provides no evidence or basis upon which the Court could do so. (Doc. 46, at 11). Furthermore, as argued by Trooper Prisk, Tice was not issued his trespassing citation, or his harassment citation for that matter, for engaging in a peaceful protest. (Doc, 48, at 15). Instead, the record reflects that Trooper Prisk issued these citations because Tice sent Stocker the allegedly threatening email and then trespassed on Stocker's private property. Looking specifically at the trespass citation, the record contains no evidence that the police do not typically prosecute similarly situated individuals for simple trespass. Accordingly, this Court cannot conclude this case fits into the exceptions contemplated by *Nieves*. Therefore, summary judgment is properly **GRANTED** in Trooper Prisk's favor and Tice's retaliatory prosecution claim against him is to be **DISMISSED**. (Doc. 38); *see Farmer*, 353 F. Supp. 3d at 357 (granting summary judgment where police charged the plaintiff based on his behavior).

C.  TICE'S SUPPRESSION OF FREE SPEECH CLAIM AGAINST TROOPER PRISK

Trooper Prisk argues that because he did not threaten to jail Tice, Tice has failed to establish the personal involvement necessary to sustain his suppression of freedom of speech claim seen in Count III of the amended complaint. (Doc. 20, at 11; Doc. 40, at 12). Trooper Prisk continues that while his partner allegedly threatened to jail Tice if he were to continue to protest, he cannot be held liable for the alleged Suppression of Right to Free Speech due to the fact that he did not threaten to arrest or incarcerate Tice. (Doc. 42, at 12). Tice argues that Trooper Prisk was personally involved in suppressing Tice's speech, as he was the officer who cited Tice for trespassing and harassment. (Doc. 46, at 12). As Tice sees it, "[t]o argue a lack of personal involvement by [Trooper] Prisk in suppressing Tice's speech is rich given that [Trooper] Prisk is the officer who actually brought prosecutions against Tice for his protesting activity and email communication with Stocker." (Doc. 46, at 12).

Neither party cites substantial case law in support of their positions as they relate to Tice's suppression of speech claim. However, it is clear to the Court that there is a question of fact surrounding whether or not Trooper Prisk was personally involved in suppressing Tice's speech. The law is clear that "a Section 1983 plaintiff must aver facts that demonstrate 'the defendants' personal involvement in the alleged misconduct.'" *Mbewe v. Delbalso*, No. 4:24-CV-01508, 2025 WL 52474, at *2 (M.D. Pa. Jan. 8, 2025) (quoting *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020)). "Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through allegations of 'personal direction' or of 'actual knowledge and acquiescence'; however, such averments must be made with particularity." *Mbewe*, 2025 WL 52474, at *2. Here, the record is inconclusive as to whether Tice's speech was suppressed at Trooper Prisk's personal direction, and thus there remains a

question of material fact. Thus, summary judgment on Tice's suppression of speech claim on the basis of personal involvement will not be granted. (Doc. 38).

### D. TROOPER PRISK IS ENTITLED TO QUALIFIED IMMUNITY

According to Trooper Prisk, Tice's claims against him must be dismissed because he is entitled to qualified immunity. (Doc. 42, at 13-15). Specifically, Trooper Prisk puts forward that Tice has failed to establish a constitutional violation of a clearly established right necessary for his First Amendment claims. (Doc. 42, at 14). "Qualified immunity protects police officers who make wrong but reasonable judgment calls absent clearly established law." *Urda v. Sokso*, No. 24-1804, 2025 WL 2046175, at *1 (3d Cir. July 22, 2025). Courts consider two prongs when determining whether an official is entitled to qualified immunity: "(1) whether the official violated a constitutional right; and (2) whether the right was clearly established." *McAndrew v. Northumberland Cnty.*, No. 4:22-CV-00834, 2023 WL 408905, at *6 (M.D. Pa. Jan. 25, 2023); *see Davenport v. Borough of Homestead*, 870 F.3d 273, 281 (3d Cir. 2017). A right is "clearly established" when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The Supreme Court has stated that [the clearly established standard] does not require a case directly on point but requires that 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Andresen v. Pennsylvania*, No. 1:20-CV-989, 2022 WL 3045843, at *3 (M.D. Pa. Aug. 2, 2022) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Relying generally on the text of a constitutional provision to find a clearly established right is not enough. *See Anderson*, 483 U.S. at 639 (defining clearly established as particular and relevant, rather than general violation of a constitutional provision and stating that "if the test of 'clearly established law' were to be

applied [...generally...]" it would "convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.") (quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984)). Instead, "'in the light of pre-existing law,' the unlawfulness of the officer's conduct 'must be apparent.'" *Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017) (quoting *Anderson, supra,* at 640). Here, Trooper Prisk asserts that Tice cannot establish the violation a clearly established right. (Doc. 42, at 14). Tice argues that Trooper Prisk did so by "order[ing] Tice to cease a silent, one-man protest on an obviously open and public sidewalk, [] where there was no threat to person or property and no possibility that Tice was trespassing where he was standing." (Doc. 46, at 14) (internal citations omitted). The record, however, does not reflect this chain of events. As explained *supra*, the record reflects that Trooper Prisk issued Tice his citations after an independent investigation and assessment of the situation. Further, Tice has failed to supply any case law supporting his conclusion that a clearly established right was violated, and upon review by this Court, no precedent addressing a similar chain of events in this case could be located. Indeed, as explained *supra*, there remains a question of fact surrounding whether Trooper Prisk had probable cause to issue Tice a citation for harassment or personal involvement in the suppression of Tice's free speech, and no clearly established law guiding this Court in making that determination. As the Third Circuit recently made clear, the lack of guiding law alone is grounds for determining there is no "robust consensus of cases of persuasive authority," sufficient to find the right at issue is clearly established. *Urda*, 2025 WL 2046175, at *2. "Instead, existing law must clearly establish that what *this* officer did in *these* circumstances violated the plaintiff's rights." *Urda*, 2025 WL 2046175, at *2 (citing *Anderson v. Creighton*, 483 U.S. 635, 639–41 (1987)). That cannot be shown here, regarding either of

Tice' First Amendment claims, especially considering the Third Circuit's warning against defining clearly established law too abstractly and the Supreme Court's guidance that "the clearly established right must be defined with specificity." *Urda*, 2025 WL 2046175, at *2; *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019).   Accordingly, this Court is compelled to find that Trooper Prisk is protected by qualified immunity for Tice' First Amendment suppression of speech claims and retaliatory prosecution claims. (Doc. 38). Tice's First Amendment claims, Count II and Count III of the amended complaint, are thus **DISMISSED** (Doc. 20). Trooper Prisk's motion for summary judgment is **GRANTED**. (Doc. 38).

## IV.  CONCLUSION

Based on the foregoing, Stocker's motion for summary judgment is **GRANTED** (Doc. 35) and Trooper Prisk's motion for summary judgment is **GRANTED** as he is protected by qualified immunity against Tice's First Amendment suppression of speech and retaliatory prosecution claims. (Doc. 38). Tice's amended complaint is **DISMISSED**. (Doc. 20). The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**BY THE COURT:**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**